UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **SLOAN DAMON**, *et al* | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * Civil Case No. 10-cv-03067 RDB |
| | * |
| **PLUMPTON PARK ZOOLOGICAL** | * |
| **GARDENS, INC.**, *et al* | * |
| | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' REPLY TO PLAINTIFFS'
RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

Defendants Plumpton Park Zoological Gardens, Inc. and Edward Clark Plumstead, by their undersigned attorneys, file this Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss and say:

**I. NEITHER THE PLAINTIFFS' COMPLAINT NOR THEIR SUPPLEMENTARY AFFIDAVITS CONTAIN FACTS TO SHOW THAT THEY WERE "ENGAGED IN COMMERCE OR IN THE PRODUCTION OF GOODS FOR COMMERCE" IN THE COURSE OF THEIR EMPLOYMENT BY THE ZOO**

In their Opposition to the Defendants' Motion to Dismiss, the Plaintiffs concede that the Zoo does not qualify as "an enterprise engaged in commerce" under Section 203(s) of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, *et seq.* and therefore, they must establish that they themselves are somehow "engaged in commerce or in the production of goods for commerce." ECF 5-1, Pl. Opp., p. 1, n.1. But the Plaintiffs' Complaint, on its face, fails to state facts sufficient to establish that they were "engaged in commerce or in the production of goods for commerce."

Plaintiffs simply allege that "each of the Plaintiffs engaged in commerce or in the production of goods for commerce." *See* ECF1, Complaint ¶16. This conclusory

allegation, devoid of any facts, is precisely the "formulaic recitation of a cause of action's elements" that cannot support a cause of action. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 547 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). The present Complaint contains no factual allegations that would permit this Court to find that the elements of the FLSA are properly pleaded.

Attempting to rescue a woefully inadequate Complaint, Plaintiffs now augment their pleading by affidavit, claiming that they were "engaged in commerce or in the production of goods for commerce" because, in the course of their employment by the Zoo, they would (1) "occasionally" drive across state lines to transport animals; (2) "telephone across state lines"; and (3) handle mail sent across state lines. *See* ECF 5-2, Affidavit of Sloan Damon, ¶¶ 8-10.

The Plaintiffs' claim that in the course of their employment, they "occasionally" drove across state lines to transport animals is for naught. Even if true, "'occasional shipments of insubstantial amounts of goods' are insufficient to bring an employee within the coverage of the [FLSA]." *See Remmers v. Egor,* 332 F.2d 103, 104 (2d Cir. 1964) (quoting *Mabee v. White Plains Pub. Co.,* 327 U.S. 178 (1946)). The employee's activities that constitute "commerce" must be "regular and recurring," and activities that are "occasional" are insufficient to result in coverage. 29 C.F.R. § 776.3. Employees who only occasionally engage in interstate transactions are not covered by the FLSA. *See, e.g., Russell v. Continental Restaurant, Inc.*, 430 F. Supp.2d 521, 526 (D. Md. 2006)(defendant's motion to dismiss granted where plaintiff's communications with vendors and customers and processing of credit card payments did not bring claim within the ambit of the FLSA). Thus, by their own admission, Plaintiffs activities are not within the ambit of the FLSA.

Nor do occasional out-of-state communications, such as an occasional call to the

veterinarian to make an inquiry, bring Plaintiffs' claim within the ambit of the FLSA. The Department of Labor regulations provide that an employee who uses interstate communications only incidentally is not covered by the FLSA:

> Since "commerce" as used in the act includes not only "transmission" of communications but "communication" itself, employees whose work involves the continued use of the interstate mails, telegraph, telephone or similar instrumentalities for communication across State lines are covered by the act. This does not mean that any use by an employee of the mails and other channels of communication is sufficient to establish coverage.

29 C.F.R. § 776.10(b).

Plaintiffs further claim that, because the Zoo received visitors from states outside of Maryland, they were somehow "engaged in commerce." *See* ECF 5-2, Affidavit of Sloan Damon, ¶ 11. That out-of-state visitors may have visited the Zoo does not mean that Plaintiffs were "engaged in commerce." In fact, this exact argument was rejected by this Court in *Russell v. Continental Restaurant, Inc*., 430 F. Supp.2d 521, 525-27 (D. Md. 2006)(although waitress serving out-of-state patrons may "affect" commerce, this activity does not mean that waitress was employed in the "channels of commerce").

## II. THE ZOO IS EXEMPT FROM THE OVERTIME PROVISIONS OF THE FLSA AND MARYLAND WAGE AND HOUR LAW UNDER THE EXEMPTION FOR AN "AMUSEMENT OR RECREATION ESTABLISHMENT"

Conceding, as they must, that the Plumpton Park Zoo "is open to the public for their enjoyment," ECF 5-1, Pl. Opp. at p. 4, Plaintiffs expand the bounds of straight-faced advocacy by arguing that the Zoo is not really a zoo at all. Rather, the Plaintiffs stoutly maintain, it is an "animal sanctuary," the purpose of which is to "house a wide variety of animals ... and care for them." *Id.* The notion is absurd. The Plumpton Park Zoo is a zoo, a non-profit facility providing recreation and amusement to the public.

"Whether an FLSA exemption applies in a given situation is ultimately a question

of law." *E.g., Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 450 (4th Cir. 2004).[1] And, in determining if an employer is an "amusement or recreational establishment," within the exemption contemplated by 29 U.S.C. § 213(a)(3), a court will look to the "primary purpose" of the establishment.[2] It is the "character of the revenue producing activity which affords the employer the protection of the exemption." *Hamilton v. Tulsa County Public Facilities Authorities,* 85 F.3d 494, 497 (10th Cir. 1996)(amusement and recreational exemption applied to maintenance workers and security guards employed by the fairgrounds); *see also Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 767

---

[1] Plaintiffs suggest, albeit obliquely, that the Defendants' Rule 12(b)(1) factual attack on subject matter jurisdiction, to the extent based on the "recreation or amusement" exemption to the FLSA, may also implicate an element of the Plaintiff's claim and thus, the Court should treat this aspect of the Defendants' Motion as one for summary judgment. ECF 5-1, Pl. Opp. at 2. But this Court has opined that, where an FLSA exception applies, dismissal under Rule 12(b)(1) is appropriate. *See Quinteros v. Sparkle Cleaning, Inc.* 532 F. Supp. 2d 762, 776 (D. Md. 2008)("Even if Plaintiff could establish [that their employer was otherwise subject to FLSA], Plaintiffs' Complaint would still be dismissed against [the employer] because [the employer is] covered under the "movie theater" exemption . . ."). Pursuant to Rule 12(b)(1), in determining whether subject matter jurisdiction exists, the district court is to regard the allegations in pleadings as "mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding into one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 767 (4th Cir. 1991). In such case, the court will, however, "apply the standard applicable to a motion for summary judgment standard, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material facts exists." *Id*.

Furthermore, even if the Court were to treat this issue as a motion for summary judgment, the result would be the same. Here, the *facts* regarding the status of the Zoo as a recreational or amusement facility, open to the public for its enjoyment, are undisputed. It is only for the Court to decide the legal question of whether, on those facts, the exemption applies.

[2] Plaintiffs cite *Brennan v. Yellowstone Park Lines*, 478 F.2d 285 (10th Cir. 1973) for the notion that "a major purpose of the exemption is to allow recreational facilities to employ young people on a seasonal basis . . .." Pl. Opp. At 4-5. But later, rejecting the *Yellowstone Park Lines* rationale, the Fifth Circuit pointed out: "while that appears to be a logical theory, we can find nothing in the legislative history to confirm it. The legislative history simply does not address the purpose of the amusement-recreation exemption." *Brennan v. Texas City Dike & Marina, Inc*., 492 F.2d 1115, 1118 (5th Cir. 1974).

(D. Md. 2008)(motion to dismiss granted where "movie theater" exemption applied to the janitorial staff of a movie theater); *see also* 29 C.F.R. §779.302.

Courts have looked to various criteria to determine eligibility for the exception. In *Brennan v. Texas City Dike & Marina, Inc.,* 492 F.2d 1115 (5th Cir. 1974), the Court reasoned that the employer's "principal activity should be determinative of the marina's eligibility for an exemption" and applied an "income test" such that "the marina's major income source will be its principal activity." 492 F.2d at 1119. The Tenth Circuit, however, has held that financial percentages are not the only relevant factors, preferring instead to "examine the totality of the circumstances, including but not limited to the establishment's primary purpose; activities and services, such as restaurants and shops, that it offers incidental to its recreational facilities; its relationship to land set aside for recreational use; and its revenue sources." *Chessin v. Keystone Resort Mgmt., Inc.*, 184 F.3d 1188, 1194 (10th Cir. 1999). Either way, there can be no doubt that the Zoo's principal activity is as a zoo.

In each year since its opening in 1987, substantially all of the Zoo's revenues have been derived from admissions fees paid by members of the public. *See* ECF 3-5, Affidavit of Samuel E. Conner, Jr., ¶7; ECF 3-2 and 3-3. The Zoo's total revenues for fiscal year 2009 were $218,570; of these revenues, $204,054 were generated by admission fees paid by members of the public. ECF 3-2 at p. 9. And, of the Zoo's total revenues for fiscal year 2008 of $259,765, $212,985 was generated from admission fees and $2,117 from membership dues from member of the public. ECF 3-3 at p. 9.

The mission of the Zoo is to maintain a collection of animals as a public zoological park, and develop and sponsor recreational programs based upon its animal collection. *See* ECF 3-5, Affidavit of Samuel E. Conner, Jr., ¶3, *see also* ECF 3-2, p.1. and 3-3, p. 1 (stating the Zoo's mission). Members of the public, including families,

schools, and other groups, regularly visit the Zoo for amusement or recreation. *See* ECF 3-5, Affidavit of Samuel E. Conner, Jr., ¶3. At the time of Plaintiffs' employment, the Zoo housed over fifty different species of animals --tigers, giraffes, zebras, bears, cougars, deer, wolves, camels, monkeys, apes, reptiles, amphibians, birds -- all for display to the public. And, to pursue its mission, the Zoo holds a U. S. Department of Agriculture Class C "exhibitor's license" as required by the Animal Welfare Act, 7 U.S.C. §2131 *et seq*.³ *See* **Exhibit E**, Affidavit of Samuel E. Conner, Jr., ¶ 4.

The primary purpose of the Zoo is not and never has been as an animal sanctuary to house rescued animals. On some occasions, the Zoo has stepped in to rehabilitate animals, but typically at the request of law enforcement personnel who have confiscated an exotic animal possessed illegally, or at the request of an overwhelmed owner who suddenly finds himself unable to care for his exotic acquisition. *See* **Exhibit E**, Affidavit of Samuel E. Conner, Jr., ¶¶ 1 and 3.

In support of their "animal sanctuary" theory, Plaintiff note the unremarkable and irrelevant fact that the Zoo, a 501(c)(3) corporation, solicits donations from the public and sponsors a fund-raising "adoption" program, pursuant to which members of the public donate money to "adopt" an animal.⁴ But Plaintiffs cite no authority for the

---

³ A "Class 'C' licensee (exhibitor) means a person ... whose business involves the showing or displaying of animals to the public. A class 'C' licensee may buy and sell animals as a minor part of the business in order to maintain or add to his animal collection." 9 C.F.R.§ 1.1.

⁴ At one time, the Zoo did sponsor an animal "adoption" fund-raising program. The program was designed such that a donor could sponsor ("adopt") a Zoo animal in exchange for a charitable contribution. The donor received a personalized certificate and a photograph of the "adopted" animal; and the donor could claim the donation as a tax deduction, since the Zoo is a 501(c)(3) organization. But the donor did not take control of the animal or become the "owner" of the animal in any way. *See* **Exhibit E**, Affidavit of Samuel E. Conner, Jr., ¶ 2.

proposition that a zoo, by soliciting donations and maintaining an animal adoption fund-raising program,[5] is somehow transformed into an "animal rescue" organization that is not a recreational or amusement establishment.

Since the Zoo's primary purpose is to provide "amusement and recreation" to the public and less than a third of its revenues are generated during the off-season, it has satisfied the requirements of § 213(a)(3)(B). Its employees are exempt from the requirement of the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 207(a).

### III. BECAUSE THE ZOO IS AN "AMUSEMENT OR RECREATIONAL ESTABLISHMENT" THE NATURE OF THE WORK PERFORMED BY PLAINTIFFS IS IRRELEVANT

In order to qualify for a recreational or amusement establishment exemption under 29 U.S.C. § 213(a)(3), the Zoo must show either that the establishment operated for not longer than seven months in a calendar year, or that off-season receipts were less than one-third of in-season receipts in the previous calendar year. In its Motion to Dismiss, the Zoo provided undisputed evidence that for 2008 and 2009, the average of six months of off-season receipts is less than 33 1/3 % of the average of in-season receipts for the rest of the year.

Undeterred by these conceded facts, however, the Plaintiffs contend that the Zoo should not be considered a recreational or amusement establishment because (1) the Zoo "operates on a 12 month basis";[6] (2) Plaintiffs worked during the off-season; and (3)

---

[5] In any event, the Zoo's adoption program met with little success in recent years: no animals were "adopted" during the years 2008-2010 and no revenues were derived from "adoptions." See **Exhibit E**, Affidavit of Samuel E. Conner, Jr., ¶ 2.

[6] In 2009, the Zoo was open to the public from mid-March to November 30th, and in 2010, the Zoo was open to the public from March 27, 2010 to July 31, 2010; on October 23, 2010, the Zoo opened on a weekend only schedule. See ECF 3-5, Affidavit

Plaintiffs worked more during the winter months than they did during the summer months.  *See* ECF 5-1, Pl. Opp. at p. 5.

It should come as no surprise that *someone* must work at the Zoo during the off-season -- the animals still need to be fed, watered and maintained.  But where the Zoo has met the receipts test, it need not be closed for any set period of time.  That Plaintiffs were employed by the Zoo in the off-season does not alter the fact that the Zoo's operation is and was seasonal, and as such, it is an establishment qualifying for an exemption from the minimum wage and overtime requirements of the FLSA.  *See Jeffery v. Sarasota White Sox*, 64 F.3d 590, 596 (11th Cir. 1995)("It is the revenue-producing operation of the Sarasota White Sox as a professional baseball franchise which affords it the protection of the [amusement or recreational establishment] exemption. . ..  29 U.S.C. § 213(a)(3) does not require Defendant to completely shut down or to terminate every employee at the end of each baseball season").

### IV.   AS A MATTER OF LAW, PLAINTIFFS HAVE NOT STATED A CLAIM UNDER THE MARYLAND WAGE PAYMENT AND COLLECTION LAW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Count III of the Complaint must be dismissed because Plaintiffs have failed to state a claim for relief under the Maryland Wage Payment and Collection Law (the "MWPCL").  The MWPCL is not simply "an additional vehicle to pursue [their claim of eligibility for overtime pay]," as claimed by Plaintiffs.  Not only do Plaintiffs fail to distinguish or refute any of the cases cited by Defendants, they have cited no case in support of their unique construction.  The Maryland Wage and Hour Law, MD CODE ANN., LAB. & EMPL. §3-401 *et seq*. contains its own remedy provision, MD CODE ANN., LAB. & EMPL. §3-427,

---

of Samuel E. Conner, Jr., ¶¶ 5-6.  Nonetheless, Plaintiffs still contend that the Zoo "operates on a 12 month basis," presumably because it must employ people to care for the animals during the off-season.

which permits an employee to bring an action against an employer to recover claimed overtime wages. The remedies provided by the Maryland Wage and Hour Law do not include treble damages, sought by Plaintiffs in Count III of the Complaint. For the reasons set forth in Defendants' Motion to Dismiss and supporting Memorandum and Exhibits, Count III should be dismissed as a matter of law.

## V. CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' Motion to Dismiss and supporting Memorandum and Exhibits, Defendants' Motion to Dismiss should be granted.

Respectfully submitted,

/s/
Norman L. Smith
Federal Bar No. 24057
E-mail: nlsmith@fisherwinner.com

/s/
Lauren E. McComas
Federal Bar No. 27873
E-mail: lmccomas@fisherwinner.com

Fisher & Winner, LLP
2002 Clipper Park Road, Suite 108
Baltimore, Maryland 21211
Telephone (410) 554-3600
Facsimile (410) 554-3636

*Attorneys for Defendants Plumpton Park Zoological Gardens, Inc. and Edward Clark Plumstead*